Carl Anthony DAVIS, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–99–220–CR.

Court of Appeals of Texas,
Waco.

June 21, 2000.

Scott Peterson, Waco, for appellant.

John W. Segrest, Crim. Dist. Atty., James Wiley, Asst. Crim. Dist. Atty., Waco, for appellee.

Before Chief Justice DAVIS Justice VANCE, and Justice GRAY.

## OPINION

Bill VANCE, Justice.

A jury convicted Carl Anthony Davis of aggravated assault and assessed punishment, enhanced by two prior felony convictions, of 35 years' imprisonment. Davis appeals on two issues, both focused on the trial court's charge. He contends (1) the court erred by failing to charge the jury on self-defense and (2) the court erred in denying his request for an instruction on the lesser-included offense of assault. We conclude the trial court did not err in refusing to instruct on self-defense, in the absence of evidence to raise the issue. Furthermore, having reviewed the record, we cannot conclude that any evidence was presented at trial to allow a jury to rationally find Davis guilty only of assault. Thus, we will affirm the judgment.

### BACKGROUND FACTS

Davis lived with his mother, Onita Washington, and her husband, Lonzell Washington. On September, 11, 1996, after the Washingtons had gone to bed, Davis entered their bedroom and asked Onita for money and a gun. When Onita told Davis that she did not have any money, he told her, "You either get up and get me some money or I'm going to kill you." Davis then left the room and returned with a steak knife and stated, "I want $300 or I'm going to kill your ass." Onita told her son that she would need to go to town to borrow the money.

Davis waited while his mother and stepfather got dressed. The three of them got into a car and drove to the house of Onita's brother, Charles Davis. Onita was the front passenger while Davis sat in the back with the knife still drawn. During this time, Davis again told Onita, "I'm going to kill you." Holding the knife, Davis followed Onita to the front door. When no one answered, Davis went to rear of the house to knock on the back window. While Davis was gone, Charles came to the front door and was informed of the situa-

tion. When Davis returned, Charles was able to grab the knife away from Davis without injuring anyone. Davis then walked off saying, "It's not over yet, I'm going to kill you."

## SELF–DEFENSE

■ Davis' first issue asserts that the court erred in failing to give his requested jury instruction on self-defense based on apparent danger. The jury should be instructed on self-defense if the evidence raises the issue. *Riddle v. State*, 888 S.W.2d 1, 6 (Tex.Crim.App.1994); *Withers v. State*, 994 S.W.2d 742, 744 (Tex.App.— Corpus Christi 1999, pet. ref'd).

Davis asserts that the issue of self-defense was raised through his testimony on cross-examination:

> [STATE]: [O]n September 11[th], 1996, you did scare your mother [Onita] with a knife, didn't you?
>
> [DAVIS]: Yeah.
>
> . . .
>
> [STATE]: You knew you shouldn't do it, right?
>
> [DAVIS]: Oh, no, I didn't scare her with a knife, I just got it in self defense.
>
> [STATE]: You knew—
>
> [DAVIS]: I remember he [Lonzell] was going to try to hit me and he hopped up with murder in his eyes, so that's all what you got to look at, is if I—if I wouldn't have got that knife and defended myself, I would have got murdered.

■ Davis' use of the knife was a threat of force. A threat of force is justified when the use of force is justified. TEX. PEN.CODE ANN. § 9.04 (Vernon 1994). Under the theory of self-defense, "a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force." TEX. PEN.CODE ANN. § 9.31(a) (Vernon Supp.2000).

Davis' testimony does not establish that he was entitled to a charge on self-defense. The evidence is uncontroverted that Davis entered the Washingtons' bedroom. Upon entry, according to Davis, Lonzell "hopped up" and "tr[ied] to hit" him. At this point, Davis walked away. Then he left the bedroom, got a knife, and returned to where Lonzell was located. These actions could not have been based upon a reasonable belief that force was immediately necessary to protect himself against Lonzell. *Id.* Consequently, Davis was not entitled to a charge on self-defense. Accordingly, we hold that the trial court did not err in refusing to submit such an instruction. His first issue is overruled.

## LESSER–INCLUDED OFFENSE

Davis' second issue asserts that the trial court erred by refusing to instruct the jury on the lesser-included offense of assault. Davis argues that he was entitled to the instruction because he did not use a deadly weapon. The State maintains that the trial court properly denied Davis' request because the evidence did not support it. We agree with the State.

### *Two-step analysis*

■ Determining the propriety of a lesser-included-offense instruction requires a two-step analysis. *Forest v. State*, 989 S.W.2d 365, 367 (Tex.Crim.App.1999); *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex.Crim.App.1993). First, the lesser-included offense must be included within the proof necessary to establish the offense charged. *Forest*, 989 S.W.2d at 367. Second, there must be some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty of only the lesser offense. *Id.* If a defendant presents no evidence and no other evidence raises the issue of a lesser offense, a charge is not required. *Aguilar v. State*, 682 S.W.2d 556, 558 (Tex.Crim. App.1985); *Garcia v. State*, 17 S.W.3d 1,

5–6 (Tex.App.—Houston [1st Dist.] 1999, pet. ref'd).

■ In reviewing a court's decision not to give a charge on a lesser offense, we examine all of the evidence presented at trial, regardless of whether it is credible, controverted, or conflicting. *Lugo v. State,* 667 S.W.2d 144, 147 (Tex.Crim.App. 1984); *Garcia,* 17 S.W.3d at 6. However, the evidence may not be "plucked out of the record and examined in a vacuum." *Godsey v. State,* 719 S.W.2d 578, 584 (Tex. Crim.App.1986); *Garcia,* 17 S.W.3d at 6.

■ We focus on only the second element because the State does not contest that assault is within the proof necessary to prove the aggravated assault alleged in Davis' case. *See* TEX. PEN. CODE ANN. § 22.01(a) (Vernon Supp.2000), § 22.02(a) (Vernon 1994). An assault becomes an aggravated assault if the actor "exhibits a deadly weapon." *Id.* § 22.02(a)(2). Consequently, a lesser-included-offense instruction was required if the record contains some evidence that Davis did not exhibit a deadly weapon. *Forest,* 989 S.W.2d at 367. Even then, it must be evidence that would permit a jury to rationally find that if Davis is guilty, he is guilty only of the lesser-included offense of assault. *Id.*

### Is there evidence the steak knife was not a deadly weapon?

■ Davis contends the steak knife used was not a deadly weapon. Under Texas law, a deadly weapon is defined as: (A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. TEX. PEN. CODE ANN. § 1.07(a)(17) (Vernon 1994); *McCain v. State,* 22 S.W.3d 497, 501 (Tex. Crim.App.2000). Although a knife is not a deadly weapon per se, a knife can be found to be a deadly weapon based on the nature of its use or intended use. *Thomas v.*

*State,* 821 S.W.2d 616, 619–20 (Tex.Crim. App.1991); *Garcia,* 17 S.W.3d at 4. Factors which are important in determining whether a knife is a deadly weapon in its use or intended use are:

1. Size, shape, and sharpness of the knife;
2. Manner of its use or intended use;
3. The nature or existence of inflicted wounds;
4. Testimony of the knife's life-threatening capabilities.

*Garcia,* 17 S.W.3d at 4.

■ Davis contends that witnesses' descriptions of the knife as a "little old bitty knife" and "little old steak looking knife" provides evidence that the knife was not a deadly weapon. However, size alone is not determinative of whether a steak knife is capable of causing death or serious bodily injury. *See McCain,* 22 S.W.3d at 502; *Fortenberry v. State,* 889 S.W.2d 634, 637 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd); *see also Tisdale v. State,* 686 S.W.2d 110, 113 (Tex.Crim.App.1984); *Kent v. State,* 879 S.W.2d 80, 83 (Tex. App.—Houston [14th Dist.] 1994, no pet.); *Ford v. State,* 828 S.W.2d 525, 528 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd); *Wilson v. State,* 823 S.W.2d 777, 779–80 (Tex.App.—Waco 1992), *vacated on other grounds,* 845 S.W.2d 908 (Tex.Crim. App.1993).

In addition, although the knife was not used to inflict wounds, Onita testified that Davis used the steak knife in a manner which would cause death or serious bodily injury. Furthermore, Officer John Roziski, Waco Special Investigations Unit, testified that the steak knife had life threatening capabilities. Davis can cite evidence only that the knife was a small steak knife. Consequently, although Davis produced evidence as to size of the knife, such evidence would show only that the knife was a small deadly weapon.

As a result, we find that the record does not contain evidence which would permit a

jury to rationally find that Davis did not use a deadly weapon. Thus, the evidence does not satisfy the second element of the *Rousseau* test, and Davis was not entitled to an instruction on the lesser-included offense of assault. *Rousseau,* 855 S.W.2d at 672–73. Issue two is overruled.

We affirm the judgment.