Richard Ray Reyes v.State of Texas















IN THE
TENTH COURT OF APPEALS
 

No. 10-99-226-CR

     RICHARD RAY REYES,
                                                                         Appellant
     v.

     THE STATE OF TEXAS,
                                                                         Appellee
 

From the 54th District Court
McLennan County, Texas
Trial Court # 98-807-C
                                                                                                                
                                                                                                         
O P I N I O N
                                                                                                                

      A jury convicted Richard Ray Reyes of aggravated assault with a deadly weapon and assessed
his punishment, enhanced by two prior felony convictions, at life imprisonment. Tex. Pen. Code
Ann. § 22.02 (Vernon 1994). On appeal, Reyes contends: 1) the evidence is legally and factually
insufficient to support a deadly weapon finding, and 2) the trial court abused its discretion in
overruling his objection to extraneous-offense evidence. We will affirm the judgment.
FACTS
      Reyes was charged with an aggravated assault of Pamela Gibson. At trial, Gibson testified
to the events of the assault. On May 20, 1998, Gibson was visiting a neighbor, Robert Walker,
in his apartment when Reyes entered without knocking. The neighbor told Reyes to leave. As
Reyes left, he told Gibson that he was looking for her son. Gibson followed Reyes outside to find
out why he was looking for her son. Reyes told Gibson that her son’s father had killed his brother
and that he wanted revenge. Gibson told Reyes to leave her son alone and that he had nothing to
do with Reyes’s brother’s death. Reyes laughed while Gibson told him this, so Gibson hit Reyes
on the shoulder to get his attention.
      Reyes then hit Gibson back twice and pulled out a steak knife with a blade about four inches
in length. Reyes tried to “stick” Gibson with the knife in her chest, face, and stomach. The knife
came within a foot of her body. Reyes then left in a truck and claimed that he would return later. 
According to Gibson, she had no weapons and made no threats towards Reyes during the assault. 
Walker, the neighbor and eyewitness, corroborated Gibson’s testimony at trial.
SUFFICIENCY OF THE EVIDENCEIn his first issue, Reyes argues the evidence is legally and factually insufficient to support a
finding that the steak knife was a deadly weapon. 
A.  Standard of Review
      In determining whether the evidence is legally sufficient to support the verdict, we view all
the evidence in the light most favorable to the verdict, asking whether any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt. Weightman v.
State, 975 S.W.2d 621, 624 (Tex. Crim. App. 1998). In conducting a factual-sufficiency review,
we ask whether a neutral review of all the evidence, both for and against the finding, demonstrates
that the proof of guilt is so obviously weak as to undermine confidence in the jury’s determination,
or the evidence in favor of guilt, although adequate if taken alone, is greatly outweighed by
contrary evidence. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). When
performing this review, we give due deference to the fact finder’s assessment of the weight and
credibility of the evidence. Id. at 12. We will find the evidence factually insufficient only where
necessary to prevent manifest injustice. Id.
B.  Application
      Section 1.07 of the Penal Code defines a deadly weapon as either: (A) a firearm or anything
manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury;
or (B) anything that in the manner of its use or intended use is capable of causing death or serious
bodily injury. Tex. Pen. Code Ann. § 1.07(a)(17) (Vernon 1994); McCain v. State, 22 S.W.3d
497, 502 (Tex. Crim. App. 2000). Although a steak knife is not a deadly weapon per se under
subsection (A), it can be found to be a deadly weapon based on the manner of its use or intended
use. Thomas v. State, 821 S.W.2d 616, 619-20 (Tex. Crim. App. 1991); Davis v. State, 22
S.W.3d 638, 641 (Tex. App.—Waco 2000, pet. ref’d). Factors which are important in
determining whether a knife is a deadly weapon under subsection (B) are the: 1) size, shape, and
sharpness of the knife; 2) nature or existence of inflicted wounds; and 3) life-threatening
capabilities. Davis, 22 S.W.3d at 641.
      1.   The Evidence is Legally Sufficient
      Reyes argues the evidence is legally insufficient to support a finding that the steak knife was
a deadly weapon. Reyes claims that after Gibson struck him to get his attention, he turned and
hit her twice in the face. Reyes then pulled a knife and jabbed at her as she backed away. 
However, without doing anything further, Reyes got into a truck and drove away. Reyes argues
that these actions do not show that he intended to cause death or serious bodily injury, and absent
actual injury, will not support a deadly weapon finding. Reyes also claims there was no evidence
that the knife was capable of causing death or serious bodily injury.
      We have recently addressed these arguments in Shugart v. State, 32 S.W.3d 355, 361 n.1
(Tex. App.—Waco 2000, pet. ref’d). In Shugart, we recognized a line of cases holding that if the
evidence does not show actual injury, then there must be evidence of the actor’s intent to cause
injury. Id. However, we observed that these holdings did not survive the Court of Criminal
Appeals’s decision in McCain. Id. (citing McCain, 22 S.W.3d at 503). In McCain, the Court
stated the:
[P]lain language [of section 1.07(a)(17)(B)] does not require that the actor actually intend
death or serious bodily injury; an object is a deadly weapon if the actor intends a use of
the object in which it would be capable of causing death or serious bodily injury. The
placement of the word “capable” in the provision enables the statute to cover conduct that
threatens deadly force, even if the actor has no intention of actually using deadly force. 

McCain, 22 S.W.3d at 503. Thus, Reyes's arguments that the evidence is legally insufficient to
support a finding that he intended to cause death or serious bodily injury is misplaced. Shugart,
32 S.W.3d at 361 n.1. All that is required is evidence that Reyes intended to use the knife in a
manner which was capable of causing death or serious bodily injury. McCain, 22 S.W.3d at 503.
      In Shugart, we also stated that “it is not necessary to verify that the object was really capable
of causing death, either in the manner of its actual use or in the manner of its intended use.” 
Shugart, 32 S.W.3d at 360 (emphasis added). As a result, Reyes’s argument that there was no
evidence that the knife used in the assault was actually capable of causing death or serious bodily
injury is likewise without merit. Id.
      The evidence supports a finding that Reyes intentionally used the steak knife in a manner
which was “capable” of causing death or serious bodily injury. McCain, 22 S.W.3d at 503. 
Gibson testified that Reyes tried to “stick” her with the knife in her chest, face, and stomach and
that the knife came within a foot of her body. Walker, an eyewitness, testified that he saw Reyes
hit Gibson with his fists and then jab at her with the knife. Detective Thomas Noble, of the
Bellmead Police Department, testified that the steak knife had life threatening capabilities. In
addition, we have recently held that a steak knife of similar size was capable of causing death or
serious bodily injury. Davis, 22 S.W.3d at 641. Viewed in the light most favorable to the
verdict, the evidence is legally sufficient to support a finding that the knife was, in the manner of
its use or intended use, capable of causing death or serious bodily injury. Tex. Pen. Code Ann.
§ 1.07(a)(17)(B); Weightman, 975 S.W.2d at 624.
      2.   The Evidence is Factually Sufficient
      Reyes claims the evidence is factually insufficient to establish that he used a knife at all during
the assault, or alternatively that he intended to use the knife to cause death or serious bodily
injury. As stated before, whether Reyes intended to cause death or serious bodily injury is
irrelevant. McCain, 22 S.W.3d at 503. The relevant inquiry is whether Reyes intended to use
an object which is capable of causing death or serious bodily injury. Id.
      In support of his claim that he did not use a knife at all during the assault, Reyes points to the
testimony of Sam Drake. Drake testified that he drove Reyes over to Gibson’s apartment complex
on the date in question. Drake noticed that Reyes had a knife with him at that time. According
to Drake, Reyes entered one of the apartments and then returned to the truck. Gibson followed
Reyes back to the truck, and an argument ensued. Gibson then hit Reyes, and Reyes responded
by hitting her back. However, during this altercation Drake claims that he did not see Reyes use
a knife.
      The jury heard direct evidence from Gibson and Walker that Reyes attempted to stab Gibson
with a knife. The knife came within a foot of her body. The only evidence which tended to
contradict this was Drake’s testimony that he did not see Reyes use a knife. However, Drake also
testified that his view of Reyes was blocked and that it was possible for Reyes to have used a knife
during the assault. 
      The jury is the sole judge of the facts, the witnesses' credibility, and the weight to be given
to the evidence. Tucker v. State, 15 S.W.3d 229, 234-35 (Tex. App.—Houston [1st Dist.] 2000,
pet. ref’d). Accordingly, the jury may choose to believe or not to believe any portion of the
witnesses' testimony. Id. at 235. Reconciliation of conflicting testimony is within the jury's
province. Id.
      After examining all of the evidence neutrally, giving due deference to the jury, we conclude
that the jury’s determination that Reyes used a knife during the assault is not so contrary to the
overwhelming weight of evidence as to be clearly wrong and unjust. Johnson, 23 S.W.3d at 7. 
Issue one is overruled.
EXTRANEOUS EVIDENCE
      In his second issue, Reyes argues that the trial court abused its discretion in overruling his
objection to extraneous-offense evidence that he threatened Gibson with a knife just four days
before the assault in question. The trial court admitted the evidence on the basis that it showed
Reyes’s intent and also constituted same transaction contextual evidence.
A.  Standard of Review
      We apply a two-step test to determine the admissibility of extraneous offenses. First, we
determine whether the evidence was relevant to any material issue in the case other than the
defendant's character. Santellan v. State, 939 S.W.2d 155, 168 (Tex. Crim. App. 1997); Tex.
R. Evid. 404(b). We next determine whether the probative value of the evidence is substantially
outweighed by its potential for unfair prejudice, confusion of the issues, misleading the jury,
undue delay, or needless presentation of cumulative evidence. Tex. R. Evid. 403; Santellan, 939
S.W.2d at 169.
      The decision to admit or exclude evidence falls within the sound discretion of the trial judge. 
Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (on rehearing); Posey v.
State, 840 S.W.2d 34, 38 (Tex. App.—Dallas 1992, pet. ref'd). Absent an abuse of discretion,
we will not disturb a trial judge's ruling on the admissibility of evidence. Moreno v. State, 858
S.W.2d 453, 463 (Tex. Crim. App. 1993); Montgomery, 810 S.W.2d at 391.
B.  Application
      Reyes claims that the prior incident is unrelated to the assault in question and that it was not
admissible on the issue of his intent. Reyes also argues that because four days separated the two,
the prior incident is not admissible as same transaction contextual evidence. We agree with Reyes
that the two incidents were not so intermixed, blended, or connected to each other as to form an
indivisible criminal transaction. Castaldo v. State, 32 S.W.3d 413, 423 (Tex. App.—Waco 2000,
pet. filed). Therefore, the evidence was not admissible as same transaction contextual evidence. 
Id. However, we disagree with Reyes that the prior incident is unrelated and not admissible to
prove intent or for some “other purpose.” Tex. R. Evid. 404(b); Santellan, 939 S.W.2d at 168.
      1.   Relevance
      If a defendant objects to character evidence on the ground that the evidence is not relevant,
the proponent must show that the evidence has relevance apart from showing character. Rankin
v. State, 974 S.W.2d 707, 718 (Tex. Crim. App. 1998) (on rehearing); Montgomery, 810 S.W.2d
at 387. The proponent of the evidence must show that the evidence is being offered for a
permissible purpose other than its character-conformity nature. The proponent may succeed in
carrying this burden if it shows:
[that the extraneous offense evidence] tends to establish some elemental fact, such as
identity or intent; that it tends to establish some evidentiary fact, such as motive,
opportunity or preparation, leading inferentially to an elemental fact; or that it rebuts a
defensive theory by showing, e.g. absence of mistake or accident . . . [or] that it is
relevant upon a logical inference not anticipated by the rulemakers.

Santellan, 939 S.W.2d at 168-69 (quoting Montgomery, 810 S.W.2d at 387-88). If the trial court
concludes that the evidence has no relevance to a fact of consequence to the proceeding apart from
supporting an inference of character conformity, the evidence is inadmissable. Id. at 168;
Montgomery, 810 S.W.2d at 387.
      Reyes’s indictment charged that he intentionally or knowingly threatened Gibson with
imminent bodily injury. Tex. Pen. Code Ann. § 22.01(a)(2) (Vernon Supp. 2001). Therefore,
the specific intent to threaten is an essential element of the offense which the State had to prove
beyond a reasonable doubt. Johnson v. State, 932 S.W.2d 296, 302 (Tex. App.—Austin 1996,
pet. ref’d).
      The admission of extraneous-offense evidence to help prove intent can be justified if the
required intent for the primary offense cannot be inferred from the act itself or if the accused
presents evidence to rebut the inference that the required intent existed. Id. Intent is most clearly
in issue when the defendant argues that the charged offense was unintentional or the result of an
accident. Id.
      We find that evidence of the earlier incident is relevant to show intent in the assault in
question. Santellan, 939 S.W.2d at 167-69. Reyes argues that he did not intend to threaten
Gibson. For support, Reyes points to Gibson’s testimony that he could have stabbed her if he
wanted to and that he did not pursue her after he struck her with his fists. Reyes claims he pulled
the knife on Gibson in reaction to her coming up behind him and physically confronting him. 
Reyes then jabbed the knife at her, she backed up, and Reyes then left the scene. However, the
fact that Reyes had previously threatened Gibson with a knife tends to make it more probable that
Reyes’s intent in stabbing at Gibson four days later was to threaten her. Therefore, the extraneous-offense evidence tends to establish an elemental fact, i.e., intent. Santellan, 939 S.W.2d at 168. 
As a result, the evidence has relevance apart from showing character-conformity. Rankin, 974
S.W.2d at 718.
      2.   Probative value vs. Unfair prejudice
      Once an extraneous offense is found relevant to prove an elemental fact independent of its
tendency to show character conformity, a trial court must determine if the probative value of the
evidence is substantially outweighed by the danger of unfair prejudice. Montgomery, 810 S.W.2d
at 378; Tex. R. Evid. 403. In making this determination, a court may consider the following
factors:
      ∙    the inherent probative value of the evidence;
 
      ∙    the similarity of the conduct to the offense on trial;
 
      ∙    the strength of the evidence of the extraneous conduct;
 
      ∙    the nature of the extraneous conduct and its potential for impressing the jury in irrational,
but indelible ways;
 
      ∙    the time necessary to develop the evidence, giving consideration to whether the jury’s
attention will be diverted from the offense on trial; and
 
      ∙    the State’s need for the evidence including: (a) the availability of other evidence which
tends to accomplish the same “other purpose”; (b) the strength of the other evidence; and
(c) whether the purpose served by the admission of the extraneous conduct relates to an
issue that is in dispute.

Montgomery, 810 S.W.2d at 389-90; Horton v. State, 986 S.W.2d 297, 302-03 (Tex. App.—Waco
1999, no pet.).
      Evidence of the prior incident had “inherent probative value” and is similar to the evidence
regarding Reyes’s assault of Gibson. Both incidents involved arguments between Reyes and
Gibson which culminated in Reyes threatening Gibson with a knife. In addition, there is no
question of remoteness. The fact that the two offenses were separated by only four days provides
additional probative value. 
      However, the nature of the evidence probably left an impression upon the jury that Reyes
regularly threatened people with knives. Evidence of the misconduct was presented during the
State’s examination of Gibson and of her son, Tyler Gibson. The State also referred to the
misconduct during its opening statement and closing argument. Specifically, in closing, the State
said, “This case has a lot to do with that prior incident, even though the defense tends to minimize
that.” Accordingly, the jury’s attention was diverted from the offense on trial.
      Availability of alternative sources of proof is another factor. The material issue here was
intent. Proof of a culpable mental state generally relies upon circumstantial evidence. Id. When
examining this factor, courts will consider whether the State's evidence is circumstantial or direct. 
Id. Here, the State’s evidence of intent came from the victim and an eyewitness. Reyes
controverted and undermined the State’s proof by claiming that his actions were in response to
Gibson’s coming up behind him and physically confronting him. Because of the circumstantial
nature of the proof of the mental state and in light of this record, it does not appear that the State
had other convincing evidence to establish intent.
      Based on the Montgomery factors cited above, we cannot say with certainty that the probative
value of the prior incident was substantially outweighed by its prejudicial effect. We conclude the
trial court did not abuse its discretion in overruling Reyes’s objection to the extraneous-offense
evidence. Montgomery, 810 S.W.2d at 391; Johnson, 932 S.W.2d at 304. Absent an abuse of
discretion, we will not disturb a trial judge's ruling on the admissibility of evidence. Montgomery,
810 S.W.2d at 391.
CONCLUSIONHaving overruled Reyes’s two issues, we affirm the judgment.


                                                                         BILL VANCE
                                                                         Justice

Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Judgment affirmed 
Opinion delivered and filed April 25, 2001
Do not publish