NO. 07-04-0248-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JANUARY 13, 2005

_____


SUSAN JENNIFER COLEMAN, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 316 DISTRICT COURT OF HUTCHINSON COUNTY;

NO. 9047; HONORABLE JOHN W. LAGRONE, JUDGE

_____

Before QUINN and REAVIS and CAMPBELL, JJ.

**MEMORANDUM OPINION**

Following a plea of not guilty, appellant Susan Jennifer Coleman was convicted by a jury of aggravated assault and punishment was assessed at 12 years confinement. In

presenting this appeal, counsel has filed an *Anders*[1] brief in support of a motion to withdraw. We grant counsel's motion and affirm.

In support of his motion to withdraw, counsel has certified that he has diligently reviewed the record and, in his opinion, the record reflects no reversible error upon which an appeal can be predicated. Anders v. California, 386 U.S. 738, 744-45, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); Monroe v. State, 671 S.W.2d 583, 585 (Tex.App.--San Antonio 1984, no pet.). By the brief accompanying the motion to withdraw, counsel reviews the testimony presented during appellant's case-in-chief and the punishment phase and various trial court rulings. He then concludes the appeal is frivolous. In compliance with High v. State, 573 S.W.2d 807, 813 (Tex.Cr.App. 1978), counsel has candidly discussed why, under the controlling authorities, there is no error in the court's judgment. Counsel has also shown that he sent a copy of the brief to appellant and informed appellant that, in counsel's view, the appeal is without merit. In addition, counsel has demonstrated that he notified appellant of her right to review the record and file a *pro se* brief if she desired to do so. Appellant filed a *pro se* response. The State, however, did not favor us with a brief.

While in her home on the afternoon of April 14, 2003, Gladys Stroud heard two women banging on a door across the street and yelling for help and called 911. Several Borger Police Officers responded to the neighborhood to investigate. Detective Dennis

---

[1]Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

Burton met with appellant who, in a hysterical state, reported that someone named Brandon Blakemore had stolen her Glock gun and run away. The vicinity was searched and with appellant's consent so was her person and vehicle. There was no contraband, gun, or knife found, and the evidence established that appellant was not intoxicated nor under the influence of any narcotics.

After the police left, appellant, still upset, sat in her vehicle with her head on the steering wheel. A neighbor noticed and approached appellant with some tissues to wipe her face and check on her. Appellant told her about the incident and the neighbor offered to help search the area for the gun including a nearby alley on the chance that Blakemore might have dropped it. As appellant walked further into the alley, the neighbor reconsidered her offer to help and returned home.

Leslie Kay Ford, the victim of the alleged aggravated assault, was driving in the neighborhood on her way to her exercise class when she noticed appellant run out of the alley and flag her down. Thinking appellant might need directions, Ford rolled down her passenger window. However, appellant opened the passenger door and entered Ford's van, slumped down in the seat, and pulled her hair over her face as to avoid being recognized. Appellant then pulled a knife from her side, told Ford her gun had been stolen by Blakemore, and demanded to be driven to Blakemore's house. Ford testified that appellant said, "I've got this knife. Where does Brandon Blakemore live?" Ford responded that she knew of some Blakemores and would drive her there. She explained that she tried

3

to remain calm and accommodate appellant to avoid agitating her. Ford also testified that she complied with appellant's request because the Blakemores lived on a busy street where people would be in their yards and able to help if something happened.

When Ford arrived at the Blakemore residence, appellant changed her mind and demanded to be driven back to her vehicle. According to Ford, although appellant never made verbal threats, her instructions were always accompanied by waiving the knife in Ford's direction causing her apprehension. After Ford drove appellant back to her vehicle and she was inside it, a nearby officer approached appellant. After a brief conversation, appellant drove away in a normal fashion and the officer started to return to his vehicle when Ford motioned for him to come to her van. She recounted the incident to the officer of appellant threatening her with a knife. The officer did not offer any assistance nor suggest that she file a report. After he departed, Ford telephoned her husband from her cell phone to tell him of the incident. She testified that after their conversation, she proceeded to her exercise class. The next day she went to the Borger Police Department to make a statement; however, the officer who took her statement testified that most of it was directed to the officer's conduct whom she had spoken with immediately after the incident.

On April 28, 2003, Detective Burton, who had spoken with appellant on the 14th when she claimed her gun was stolen, telephoned appellant and asked her to come to the police station because she was a suspect in an aggravated assault. Appellant responded

4

that she wanted the name of the "witch" who accused her. According to the evidence, shortly after the call from Detective Burton, appellant telephoned Gary Garrett at the Borger Sheriff's Department to report that her knife had been stolen when her gun was stolen on the 14th, but she had failed to report it. According to Garrett, the Sheriff's Department does not have access to the Police Department's reports so he was unaware of the earlier incident. He claimed appellant was insistent that her knife had been stolen.

Appellant was arrested for aggravated assault on June 28, 2003, and according to one of the deputies, she was belligerent, profane, and refused to cooperate. A review of the record also demonstrates she was disruptive during trial. Following her conviction, the trial court appointed a psychiatrist to evaluate her and determine her competency at the time of trial and current mental condition. The doctor concluded appellant was competent during trial and except for some depression, her mental status was normal.

By the brief, counsel advances three arguable grounds, to-wit: (1) the evidence is insufficient to support appellant's conviction; (2) the punishment assessed was grossly disproportionate to the offense; and (3) appellant was denied reasonably effective assistance of counsel. Counsel then concludes no reversible error is presented.

By his first arguable point, counsel questions whether the evidence is legally sufficient to support appellant's conviction and after reviewing the evidence concludes the trial court properly overruled appellant's motion for instructed verdict. Questioning a trial court's ruling on a motion for instructed verdict is equivalent to a legal sufficiency challenge.

Cook v. State, 858 S.W.2d 467, 470 (Tex.Cr.App. 1993). It is a fundamental rule of criminal law that a defendant cannot be convicted of a crime unless it is shown beyond a reasonable doubt that he committed each element of the alleged offense. U. S. Const. amend. XIV; Tex. Code Crim. Proc. Ann. art. 38.03 (Vernon Supp. 2004-05); Tex. Pen. Code Ann. § 2.01 (Vernon 2003). In conducting a legal sufficiency review, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); Burden v. State, 55 S.W.3d 608, 612 (Tex.Cr.App. 2001). In measuring the sufficiency of the evidence to sustain a conviction, we measure the elements of the offense as defined by a hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240 (Tex.Cr.App. 1997). This is done by considering all the evidence that was before the jury—whether proper or improper—so that we can make an assessment from the jury's perspective. Miles v. State, 918 S.W.2d 511, 512 (Tex.Cr.App. 1996). As an appellate court, we may not sit as a thirteenth juror, but must uphold the jury's verdict unless it is irrational or unsupported by more than a mere modicum of evidence. Moreno v. State, 755 S.W.2d 866, 867 (Tex.Cr.App. 1988).

Before determining whether the evidence is legally sufficient to sustain the conviction, we must review the essential elements the State was required to prove. Appellant was indicted for using a deadly weapon (knife) to intentionally or knowingly threaten Leslie Kay Ford with imminent bodily injury. *See* Tex. Pen. Code Ann. §§

22.01(a)(2) and 22.02(a)(2) (Vernon 2003). Because a knife is not a deadly weapon per se, the State was required to prove that in the manner of its use or intended use, it was capable of causing death or serious bodily injury. Tex. Pen. Code Ann. § 1.07(a)(17)(B). The statute does not require that the actor actually intend death or serious bodily injury, only that the object used is capable of causing death or serious bodily injury. *See* McCain v. State, 22 S.W.3d 497, 503 (Tex.Cr.App. 2000).

Whether a particular knife is a deadly weapon depends upon the evidence presented. Thomas v. State, 821 S.W.2d 616, 620 (Tex.Cr.App. 1991). This Court has previously recognized that expert testimony is not required to determine the nature of a weapon nor is it necessary that the weapon be introduced into evidence for the State to meet its burden of proof. *See* Aleman v. State, 795 S.W. 2d 332, 335 (Tex.App.–Amarillo 1990, no pet.), citing Morales v. State, 633 S.W.2d 866, 868 (Tex.Cr.App. [Panel Op.] 1982). Also, it is unnecessary to show that any wounds were inflicted. Davidson v. State, 602 S.W.2d 272, 273 (Tex.Cr.App. [Panel Op.] 1980). However, where no actual injury is sustained, the State must present evidence of other factors to establish that a knife is a deadly weapon. *See* Victor v. State, 874 S.W.2d 748, 751 (Tex.App.–Houston [1st Dist.] 1994, pet. ref'd). Factors to consider in that determination include the dimensions and sharpness of the knife, nature or existence of wounds, manner of its use, testimony of its life-threatening capabilities, and the physical proximity of the accused and the victim. *Thomas*, 821 S.W.2d at 620; *see also* Davis v. State, 22 S.W.3d 638, 641 (Tex.App.–Waco 2000, pet. ref'd); Garcia v. State, 17 S.W.3d 1, 4 (Tex.App.–Houston [1st Dist.] 1999, pet.

7

ref'd).  The essential question is determining whether sufficient evidence was presented to establish that a defendant used or intended to use the knife in a manner "capable" of causing serious bodily injury or death.  Alvarez v. State, 566 S.W.2d 612, 614 (Tex.Cr.App. 1978).

Ford testified that the front seats in her van are approximately nine inches apart and separated only by the console.  Although the knife was not introduced into evidence, Ford described it as approximately six inches long and not shiny.  It appeared sharp and was muted and scuffed.  Appellant held it with a closed fist and frantically waived it around in Ford's direction.  Ford feared the knife was capable of causing death.  Detective Burton testified that the knife was four to six inches in length and capable of causing death or serious bodily injury.  The evidence is legally sufficient to establish appellant used a deadly weapon.

Ford testified that appellant never verbally threatened her.  However, it is well established that a threat need not be voiced and may be communicated by action or conduct.  McGowan v. State, 664 S.W.2d 355, 357 (Tex.Cr.App. 1984); *see also* Donoho v. State, 39 S.W.3d 324, 329 (Tex.App.–Fort Worth 2001, ref'd).  Assault is a nature-of-conduct offense that requires us to review the actor's conduct to determine whether he intended to cause in the victim a reasonable apprehension of imminent bodily injury. Garrett v. State, 619 S.W.2d 172, 174 (Tex.Cr.App. [Panel Op.] 1981).  Appellant entered Ford's van without invitation and immediately slumped down in the seat and acted

8

suspiciously. She claimed her gun had been stolen and was frantically waiving a knife in Ford's direction until she was driven back to her car. Ford wondered whether being in such close proximity to appellant would get her cut if she attempted to reach for her cell phone or try to remove the seat belt and jump out of the van. The evidence presented was sufficient for a rational trier of fact to conclude that appellant used a knife to intentionally or knowingly threaten Ford with death or serious bodily injury. We agree with counsel that the trial court properly overruled appellant's motion for instructed verdict.

By his second arguable ground, counsel proposes that appellant's punishment was grossly disproportionate to the crime. Appellant was convicted of a second degree felony punishable for a term of two to 20 years. *See* Tex. Pen. Code Ann. §§ 12.33(a) & 22.02(b) (Vernon 2003). A sentence imposed within the range established by the Legislature should not be disturbed on appeal. Nunez v. State, 565 S.W.2d 536, 538 (Tex.Cr.App. 1978).

Further, although an argument that the punishment imposed is grossly disproportionate to the offense survives under the Eight Amendment prohibition against cruel and unusual punishment, an objection is necessary to preserve the complaint for appellate review. *See* Solem v. Helm, 463 U.S. 277, 290-92, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983); *see also* Tex. R. App. P. 33.1(a); Solis v. State, 945 S.W.2d 300, 301 (Tex.App.–Houston [1st Dist.] 1997, pet. ref'd) (holding that a complaint of a grossly disproportionate sentence was not preserved for review). After the jury reached a verdict on punishment and sentence was pronounced by the trial court, appellant did not lodge an

9

objection or complaint regarding the 12-year sentence. Thus, no reversible error is presented by counsel's second point.

Counsel's last arguable contention is ineffective assistance of counsel. A claim of ineffectiveness is reviewed under the standard set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland*, a defendant must establish that (1) counsel's performance was deficient (*i.e.*, fell below an objective standard of reasonableness), and (2) there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different, a reasonable probability being a probability sufficient to undermine confidence in the outcome. Rylander v. State, 101 S.W.3d 107, 110 (Tex.Cr.App. 2003); *see also* Hernandez v. State, 726 S.W.2d 53, 55 (Tex.Cr.App. 1986). In other words, a defendant must demonstrate that the deficient performance prejudiced his defense. Mitchell v. State, 68 S.W.3d 640, 642 (Tex.Cr.App. 2002). Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. Garcia v. State, 887 S.W.2d 862, 880 (Tex.Cr.App. 1994), *cert. denied*, 514 U.S. 1021, 115 S.Ct. 1368, 131 L.Ed.2d 223 (1995).

The adequacy of defense counsel's assistance is based upon the totality of the representation rather than by isolated acts or omissions of trial counsel. *Id*. Although the constitutional right to counsel ensures the right to reasonably effective counsel, it does not guarantee errorless counsel whose competency or accuracy of representation is to be

judged by hindsight. Ingham v. State, 679 S.W.2d 503, 509 (Tex.Cr.App. 1984); *see also* Ex Parte Kunkle, 852 S.W.2d 499, 505 (Tex.Cr.App. 1993). Appellate review of trial counsel's representation is highly deferential and presumes that counsel's conduct fell within the wide range of reasonable and professional representation. Bone v. State, 77 S.W.3d 828, 833 (Tex.Cr.App. 2002); *see also* Mallett v. State, 65 S.W.3d 59, 63 (Tex.Cr.App. 2001). Also, a claim of ineffectiveness must be firmly founded in the record. Thompson v. State, 9 S.W.3d 808, 813 (Tex.Cr.App. 1999); Mercado v. State, 615 S.W.2d 225, 228 (Tex.Cr.App. 1982).

Although a motion for new trial was filed, no hearing was conducted. Generally, a record on direct appeal is not sufficiently developed to satisfy the first prong of *Strickland*. Mitchell v. State, 68 S.W.3d at 642. A petition for writ of habeas corpus is the appropriate manner in which to investigate claims of ineffectiveness. *Id.* Nevertheless, the record reflects that appellant's trial counsel negotiated deferred adjudication with the State which appellant declined. The record further demonstrates that despite appellant's outbursts during the trial, counsel mounted an adequate defense, lodged objections, effectively cross-examined witnesses, and moved for an instructed verdict. The record does not demonstrate that counsel's performance fell below an objective standard of reasonableness.

Appellant filed a *pro se* response professing her innocence and maintaining she was falsely accused by the victim, who is the daughter-in-law of the Chief of Police. She also

11

claims the person who stole her gun is the grandson of a popular preacher. These assertions have no legal basis and are unsupported by the record.

Appellant also claims Ford offered her a ride to her vehicle but instead was driven to the "robber's" house and told by Ford to get out. She denies having a knife with her when she got into the van. These contentions were reviewed in our legal sufficiency analysis and need not be revisited. Appellant also complains she was "let down" by trial counsel; however, his performance was reviewed under *Strickland* and found to be within the range of reasonable and professional representation.

We have also made an independent examination of the entire record to determine whether there are any arguable grounds which might support the appeal. *See* Penson v. Ohio, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988); Stafford v. State, 813 S.W.2d 503, 511 (Tex.Cr.App. 1991). We have found no such grounds and agree with counsel that the appeal is frivolous. Currie v. State, 516 S.W.2d 684 (Tex.Cr.App. 1974); Lacy v. State, 477 S.W.2d 577, 578 (Tex.Cr.App. 1972).

Accordingly, counsel's motion to withdraw is hereby granted and the judgment of the trial court is affirmed.

Don H. Reavis
Justice

Do not publish.

12
