In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

## NO. 09-24-00197-CR
_____

**JOSE FELISIANO JORDAN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

_____

**On Appeal from the 75th District Court**
**Liberty County, Texas**
**Trial Cause No. 21DC-CR-00571**

_____

### MEMORANDUM OPINION

A jury found Appellant Jose Felisiano Jordan (Jordan) guilty of aggravated assault with a deadly weapon and assessed his punishment as a habitual offender at twenty-five years of confinement. *See* Tex. Penal Code Ann. § 22.02(a)(2); *see also id.* § 12.42. In his sole issue, Jordan argues the trial court erred by denying his requested instruction on self-defense by threat. Because Jordan was not entitled to a charge on self-defense by threat, we affirm the trial court's judgment.

1

## BACKGROUND

A grand jury indicted Jordan for aggravated assault with a deadly weapon, alleging:

> . . . JORDAN did then and there intentionally or knowingly threaten [Robert][1] with imminent bodily injury while holding a small baseball bat in his hand, and swinging the bat back and forth and stating he was going to kill [Robert] if [Robert] did not give him $1500.00 and the defendant did then and there use or exhibit a deadly weapon, to-wit: a small baseball bat, during the commission of said assault[.]

During the jury trial, Officer Joe Rosas with the Cleveland Police Department testified that he responded to a disturbance call at the home of Robert and Laurie, and the trial court admitted the video recordings from Rosas's dash and body cameras. At Robert's and Laurie's request, Rosas had previously issued a criminal trespass warning to Jordan, who was at the scene when Rosas arrived. Rosas testified that Jordan was standing in the street holding a mini bat, acting aggressive, and yelling. Jordan told Rosas that he had a lighter and that he wanted to light the homeowner up. Jordan reported that Robert and Laurie had his money and other belongings, and he was at the home to "collect." Rosas did not find any other weapons on the porch of the home, where Robert and Laurie were sitting, or any

---

[1] To protect the privacy of the complaining witness named in the indictment, we refer to the victim and his family members by using pseudonyms. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

evidence that a gun was involved. Rosas testified that the mini bat Jordan possessed could be considered a deadly weapon. While Rosas was transporting Jordan to jail, Jordan reported Robert threatened to shoot him and then went inside the home.

Captain Scott Felts with the Cleveland Police Department was also dispatched to the disturbance call that included threats of bodily injury. Felts explained that Robert and Laurie were the complaining witnesses. Felts observed Jordan standing in the street holding a bat, and he explained that other officers took witness statements from Robert and Laurie.

Laurie testified that she and Robert were sitting on their porch when her nephew, Jordan, arrived and accused Robert of owing him money, which she denied. Laurie explained that Jordan had at one time lived in their back yard before she and Robert made him leave because he had threatened to kill them, so they had police issue Jordan a criminal trespass warning. Laurie testified that on the day in question, she called 911 because they were afraid of Jordan because Jordan was saying he was going "to kill us." Laurie testified that Jordan approached their porch, swung a mini bat, tried to hit Robert, who moved out of the way, and when he swung at Robert, Jordan missed and hit the keys and knocked the keys off of the porch. Laurie explained Jordan would have hit Robert with the bat if Robert had not jumped back.

On cross-examination, Laurie admitted that at some point Robert may have told her he would kill Jordan if Jordan came on their porch. Laurie denied that she

3

threatened to shoot Jordan, and she stated that neither she nor Robert had a gun or any weapon.

Robert testified that Jordan entered his yard with a bat, accused him of having his money, approached the porch, threatened to kill Robert, swung a bat at Robert, and hit Robert's keys, which flew into his neighbor's yard. Robert explained that after he dodged the bat, which came "pretty close[,]" Jordan threatened to kill Laurie, and she then called 911. Robert denied threatening Jordan, having any weapons, and telling Laurie he would kill Jordan if he got on their porch. Robert testified that he was afraid of Jordan and did not know Jordan's intentions that day. Robert's written statement corroborates his testimony that Jordan swung the bat at him.

Jordan testified in his defense and explained that when he went to Robert's and Laurie's home to collect his check, Robert "waved" him off. Jordan explained that when he went into the yard and got to the porch, Robert said he was going to shoot Jordan, ran inside the home, and never came back outside. Jordan stated he had a bat in his hand "all day long" because it would not fit in his backpack, and after Robert went inside, he hit the keys with his bat and went back to the street. According to Jordan, nobody was outside when he struck the keys. Jordan testified Laurie was never outside, and neither Robert nor Laurie pointed a gun at him.

4

## ANALYSIS

In his sole issue, Jordan argues that the trial court erred by denying his requested instruction on self-defense by threat. In reviewing alleged charge error, we determine whether error existed in the charge, and if so, whether sufficient harm resulted from the error to compel reversal. *Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005); *see Phillips v. State*, 463 S.W.3d 59, 64-65 (Tex. Crim. App. 2015). Article 36.14 of the Texas Code of Criminal Procedure requires a defendant to object to claimed errors in the jury charge before he may be heard to complain on appeal. Tex. Code Crim. Proc. Ann. art. 36.14. Generally, there is no error unless the defendant objects to the claimed omission in the jury charge. *Posey v. State*, 966 S.W.2d 57, 61 (Tex. Crim. App. 1998). Article 36.14 requires the trial judge to deliver to the jury "a written charge distinctly setting forth the law applicable to the case[.]" Tex. Code Crim. Proc. Ann. art 36.14. The trial judge is responsible for the accuracy of the jury charge and the instructions and must ensure all applicable law is incorporated into the jury charge. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007).

"The issue of the existence of a defense is not submitted to the jury unless evidence is admitted supporting the defense." Tex. Penal Code Ann. § 2.03(c). Generally, a defendant is entitled to a jury instruction on every defensive issue raised by the evidence. *Allen v. State*, 253 S.W.3d 260, 267 (Tex. Crim. App. 2008). A

5

defense is supported or raised by the evidence "if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that the element is true." *Shaw v. State*, 243 S.W.3d 647, 657-58 (Tex. Crim. App. 2007). The defendant bears the burden of showing some evidence exists to support each element of the defense. *Juarez v. State*, 308 S.W.3d 398, 404 (Tex. Crim. App. 2010); *Shaw*, 243 S.W.3d at 657. When reviewing a trial court's decision to deny a requested defensive instruction, "we view the evidence in the light most favorable to the defendant's requested submission." *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006). A trial court may refuse an instruction on a defensive theory if the issue was not raised by the evidence. *See Shaw*, 243 S.W.3d at 657-58.

For a defendant to be entitled to an instruction on a justification defense, his evidence cannot foreclose commission of the conduct in question. *See Jordan v. State*, 593 S.W.3d 340, 343 (Tex. Crim. App. 2020); *see also Rogers v. State*, 550 S.W.3d 190, 192 (Tex. Crim. App. 2018). "Self-defense is a confession-and-avoidance defense requiring the defendant to admit to his otherwise illegal conduct." *Jordan*, 593 S.W.3d at 343 (citing *Juarez*, 308 S.W.3d at 404). Thus, a defendant "cannot both invoke self-defense and flatly deny the charged conduct." *Id.*; *see Hudgins v. State*, No. 14-19-00210-CR, 2021 WL 786587, at *3 (Tex. App.—Houston [14th Dist.] Mar. 2, 2021, pet. ref'd) (mem. op., not designated for

6

publication) (holding appellant was not entitled to self-defense instruction because he denied shooting complainant and blamed it on another person).

After the State rested its case, the trial court conducted a jury charge conference. Defense counsel requested an instruction based on section 9.04 of the Texas Penal Code due to Jordan's testimony that Robert stated he was going to kill Jordan if he got on the porch. *See* Tex. Penal Code Ann § 9.04. Section 9.04 states that a threat to cause death by the production of a weapon does not constitute the use of deadly force as long as the actor's purpose is limited to creating an apprehension that he will use deadly force if necessary. *See id.* The State argued the case concerned Jordan's use of deadly force by swinging the bat and that Jordan must admit committing the crime before he could claim a justification defense. The trial court denied defense counsel's requested instruction.

The record shows that when Jordan requested the instruction, he had not yet testified, Robert had denied threatening to shoot Jordan, and Laurie had testified that Robert told her he would kill Jordan if he came on their porch. Both Laurie and Robert testified that they did not have a gun or any weapons, and Rosas did not find any weapons at the scene or any evidence that a gun was involved.

On appeal, Jordan admits that he swung the bat which he agrees was a threat of force, but he contends his use of the bat was justified. *See* Tex. Penal Code Ann. § 9.04; *see also Davis v. State*, 22 S.W.3d 638, 640 (Tex. App.—Waco 2000, pet.

7

ref'd). Under the defensive theory of self-defense, "a person is justified in using force against another when and to the degree [he] reasonably believes the force is immediately necessary to protect [himself] against the other's use or attempted use of unlawful force." *Id.* § 9.31(a). Jordan did not testify that he swung the bat at Robert in self-defense. In fact, Jordan denied swinging the bat at Robert and testified that Robert ran inside the house before Jordan ever got to the porch and before Jordan allegedly swung the bat and hit the keys that were on the porch. Jordan testified that when Jordan swung the bat, Robert was inside the house. Based on his own testimony, Jordan's actions could not have been based upon a reasonable belief that force was immediately necessary to protect himself against Robert. *See Davis*, 22 S.W.3d at 640; *see also* Tex. Penal Code Ann. §§ 9.04, 9.31(a). Thus, Jordan failed to meet his burden to show there was some evidence supporting each element of the defense. *See Juarez*, 308 S.W.3d at 404; *Shaw*, 243 S.W.3d at 657-58.

We conclude that Jordan was not entitled to a charge on self-defense by threat. Accordingly, we overrule Jordan's sole issue and affirm the trial court's judgment.

AFFIRMED.

JAY WRIGHT
Justice

Submitted on December 9, 2025
Opinion Delivered February 11, 2026
Do Not Publish

Before Golemon, C.J., Johnson and Wright, JJ.

8