NO. 07-04-0248-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



JANUARY 13, 2005



______________________________




SUSAN JENNIFER COLEMAN, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 316 DISTRICT COURT OF HUTCHINSON COUNTY;



NO. 9047; HONORABLE JOHN W. LAGRONE, JUDGE



_______________________________



Before QUINN and REAVIS and CAMPBELL, JJ.

MEMORANDUM OPINION


 Following a plea of not guilty, appellant Susan Jennifer Coleman was convicted by
a jury of aggravated assault and punishment was assessed at 12 years confinement. In
presenting this appeal, counsel has filed an Anders (1) brief in support of a motion to
withdraw. We grant counsel's motion and affirm.

 In support of his motion to withdraw, counsel has certified that he has diligently
reviewed the record and, in his opinion, the record reflects no reversible error upon which
an appeal can be predicated. Anders v. California, 386 U.S. 738, 744-45, 87 S.Ct. 1396,
18 L.Ed.2d 493 (1967); Monroe v. State, 671 S.W.2d 583, 585 (Tex.App.--San Antonio
1984, no pet.). By the brief accompanying the motion to withdraw, counsel reviews the
testimony presented during appellant's case-in-chief and the punishment phase and
various trial court rulings. He then concludes the appeal is frivolous. In compliance with
High v. State, 573 S.W.2d 807, 813 (Tex.Cr.App. 1978), counsel has candidly discussed
why, under the controlling authorities, there is no error in the court's judgment. Counsel
has also shown that he sent a copy of the brief to appellant and informed appellant that,
in counsel's view, the appeal is without merit. In addition, counsel has demonstrated that
he notified appellant of her right to review the record and file a pro se brief if she desired
to do so. Appellant filed a pro se response. The State, however, did not favor us with a
brief.

 While in her home on the afternoon of April 14, 2003, Gladys Stroud heard two
women banging on a door across the street and yelling for help and called 911. Several
Borger Police Officers responded to the neighborhood to investigate. Detective Dennis
Burton met with appellant who, in a hysterical state, reported that someone named
Brandon Blakemore had stolen her Glock gun and run away. The vicinity was searched
and with appellant's consent so was her person and vehicle. There was no contraband,
gun, or knife found, and the evidence established that appellant was not intoxicated nor
under the influence of any narcotics.

 After the police left, appellant, still upset, sat in her vehicle with her head on the
steering wheel. A neighbor noticed and approached appellant with some tissues to wipe
her face and check on her. Appellant told her about the incident and the neighbor offered
to help search the area for the gun including a nearby alley on the chance that Blakemore
might have dropped it. As appellant walked further into the alley, the neighbor
reconsidered her offer to help and returned home. 

 Leslie Kay Ford, the victim of the alleged aggravated assault, was driving in the
neighborhood on her way to her exercise class when she noticed appellant run out of the
alley and flag her down. Thinking appellant might need directions, Ford rolled down her
passenger window. However, appellant opened the passenger door and entered Ford's
van, slumped down in the seat, and pulled her hair over her face as to avoid being
recognized. Appellant then pulled a knife from her side, told Ford her gun had been stolen
by Blakemore, and demanded to be driven to Blakemore's house. Ford testified that
appellant said, "I've got this knife. Where does Brandon Blakemore live?" Ford responded
that she knew of some Blakemores and would drive her there. She explained that she tried
to remain calm and accommodate appellant to avoid agitating her. Ford also testified that
she complied with appellant's request because the Blakemores lived on a busy street
where people would be in their yards and able to help if something happened. 

 When Ford arrived at the Blakemore residence, appellant changed her mind and
demanded to be driven back to her vehicle. According to Ford, although appellant never
made verbal threats, her instructions were always accompanied by waiving the knife in
Ford's direction causing her apprehension. After Ford drove appellant back to her vehicle
and she was inside it, a nearby officer approached appellant. After a brief conversation,
appellant drove away in a normal fashion and the officer started to return to his vehicle
when Ford motioned for him to come to her van. She recounted the incident to the officer
of appellant threatening her with a knife. The officer did not offer any assistance nor
suggest that she file a report. After he departed, Ford telephoned her husband from her
cell phone to tell him of the incident. She testified that after their conversation, she
proceeded to her exercise class. The next day she went to the Borger Police Department
to make a statement; however, the officer who took her statement testified that most of it
was directed to the officer's conduct whom she had spoken with immediately after the
incident. 

 On April 28, 2003, Detective Burton, who had spoken with appellant on the 14th
when she claimed her gun was stolen, telephoned appellant and asked her to come to the
police station because she was a suspect in an aggravated assault. Appellant responded
that she wanted the name of the "witch" who accused her. According to the evidence,
shortly after the call from Detective Burton, appellant telephoned Gary Garrett at the Borger
Sheriff's Department to report that her knife had been stolen when her gun was stolen on
the 14th, but she had failed to report it. According to Garrett, the Sheriff's Department does
not have access to the Police Department's reports so he was unaware of the earlier
incident. He claimed appellant was insistent that her knife had been stolen.

 Appellant was arrested for aggravated assault on June 28, 2003, and according to
one of the deputies, she was belligerent, profane, and refused to cooperate. A review of
the record also demonstrates she was disruptive during trial. Following her conviction, the
trial court appointed a psychiatrist to evaluate her and determine her competency at the
time of trial and current mental condition. The doctor concluded appellant was competent
during trial and except for some depression, her mental status was normal.

 By the brief, counsel advances three arguable grounds, to-wit: (1) the evidence is
insufficient to support appellant's conviction; (2) the punishment assessed was grossly
disproportionate to the offense; and (3) appellant was denied reasonably effective
assistance of counsel. Counsel then concludes no reversible error is presented. 

 By his first arguable point, counsel questions whether the evidence is legally
sufficient to support appellant's conviction and after reviewing the evidence concludes the
trial court properly overruled appellant's motion for instructed verdict. Questioning a trial
court's ruling on a motion for instructed verdict is equivalent to a legal sufficiency challenge. 
Cook v. State, 858 S.W.2d 467, 470 (Tex.Cr.App. 1993). It is a fundamental rule of criminal
law that a defendant cannot be convicted of a crime unless it is shown beyond a reasonable
doubt that he committed each element of the alleged offense. U. S. Const. amend. XIV; Tex.
Code Crim. Proc. Ann. art. 38.03 (Vernon Supp. 2004-05); Tex. Pen. Code Ann. § 2.01
(Vernon 2003). In conducting a legal sufficiency review, we must determine whether, after
viewing the evidence in the light most favorable to the prosecution, any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt. Jackson
v. Virginia, 443 U.S. 307, 318, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); Burden v.
State, 55 S.W.3d 608, 612 (Tex.Cr.App. 2001). In measuring the sufficiency of the evidence
to sustain a conviction, we measure the elements of the offense as defined by a
hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240 (Tex.Cr.App. 1997). 
This is done by considering all the evidence that was before the jury--whether proper or
improper--so that we can make an assessment from the jury's perspective. Miles v. State,
918 S.W.2d 511, 512 (Tex.Cr.App. 1996). As an appellate court, we may not sit as a
thirteenth juror, but must uphold the jury's verdict unless it is irrational or unsupported by
more than a mere modicum of evidence. Moreno v. State, 755 S.W.2d 866, 867
(Tex.Cr.App. 1988).

 Before determining whether the evidence is legally sufficient to sustain the
conviction, we must review the essential elements the State was required to prove. 
Appellant was indicted for using a deadly weapon (knife) to intentionally or knowingly
threaten Leslie Kay Ford with imminent bodily injury. See Tex. Pen. Code Ann. §§
22.01(a)(2) and 22.02(a)(2) (Vernon 2003). Because a knife is not a deadly weapon per
se, the State was required to prove that in the manner of its use or intended use, it was
capable of causing death or serious bodily injury. Tex. Pen. Code Ann. § 1.07(a)(17)(B). 
The statute does not require that the actor actually intend death or serious bodily injury,
only that the object used is capable of causing death or serious bodily injury. See McCain
v. State, 22 S.W.3d 497, 503 (Tex.Cr.App. 2000).

 Whether a particular knife is a deadly weapon depends upon the evidence
presented. Thomas v. State, 821 S.W.2d 616, 620 (Tex.Cr.App. 1991). This Court has
previously recognized that expert testimony is not required to determine the nature of a
weapon nor is it necessary that the weapon be introduced into evidence for the State to
meet its burden of proof. See Aleman v. State, 795 S.W. 2d 332, 335 (Tex.App.-Amarillo
1990, no pet.), citing Morales v. State, 633 S.W.2d 866, 868 (Tex.Cr.App. [Panel Op.]
1982). Also, it is unnecessary to show that any wounds were inflicted. Davidson v. State,
602 S.W.2d 272, 273 (Tex.Cr.App. [Panel Op.] 1980). However, where no actual injury is
sustained, the State must present evidence of other factors to establish that a knife is a
deadly weapon. See Victor v. State, 874 S.W.2d 748, 751 (Tex.App.-Houston [1st Dist.]
1994, pet. ref'd). Factors to consider in that determination include the dimensions and
sharpness of the knife, nature or existence of wounds, manner of its use, testimony of its
life-threatening capabilities, and the physical proximity of the accused and the victim. 
Thomas, 821 S.W.2d at 620; see also Davis v. State, 22 S.W.3d 638, 641 (Tex.App.-Waco
2000, pet. ref'd); Garcia v. State, 17 S.W.3d 1, 4 (Tex.App.-Houston [1st Dist.] 1999, pet.
ref'd). The essential question is determining whether sufficient evidence was presented
to establish that a defendant used or intended to use the knife in a manner "capable" of
causing serious bodily injury or death. Alvarez v. State, 566 S.W.2d 612, 614 (Tex.Cr.App.
1978). 

 Ford testified that the front seats in her van are approximately nine inches apart and
separated only by the console. Although the knife was not introduced into evidence, Ford
described it as approximately six inches long and not shiny. It appeared sharp and was
muted and scuffed. Appellant held it with a closed fist and frantically waived it around in
Ford's direction. Ford feared the knife was capable of causing death. Detective Burton
testified that the knife was four to six inches in length and capable of causing death or
serious bodily injury. The evidence is legally sufficient to establish appellant used a deadly
weapon.

 Ford testified that appellant never verbally threatened her. However, it is well
established that a threat need not be voiced and may be communicated by action or
conduct. McGowan v. State, 664 S.W.2d 355, 357 (Tex.Cr.App. 1984); see also Donoho
v. State, 39 S.W.3d 324, 329 (Tex.App.-Fort Worth 2001, ref'd). Assault is a nature-of-conduct offense that requires us to review the actor's conduct to determine whether he
intended to cause in the victim a reasonable apprehension of imminent bodily injury. 
Garrett v. State, 619 S.W.2d 172, 174 (Tex.Cr.App. [Panel Op.] 1981). Appellant entered
Ford's van without invitation and immediately slumped down in the seat and acted
suspiciously. She claimed her gun had been stolen and was frantically waiving a knife in
Ford's direction until she was driven back to her car. Ford wondered whether being in such
close proximity to appellant would get her cut if she attempted to reach for her cell phone
or try to remove the seat belt and jump out of the van. The evidence presented was
sufficient for a rational trier of fact to conclude that appellant used a knife to intentionally
or knowingly threaten Ford with death or serious bodily injury. We agree with counsel that
the trial court properly overruled appellant's motion for instructed verdict. 

 By his second arguable ground, counsel proposes that appellant's punishment was
grossly disproportionate to the crime. Appellant was convicted of a second degree felony
punishable for a term of two to 20 years. See Tex. Pen. Code Ann. §§ 12.33(a) & 22.02(b)
(Vernon 2003). A sentence imposed within the range established by the Legislature should
not be disturbed on appeal. Nunez v. State, 565 S.W.2d 536, 538 (Tex.Cr.App. 1978). 

 Further, although an argument that the punishment imposed is grossly
disproportionate to the offense survives under the Eight Amendment prohibition against
cruel and unusual punishment, an objection is necessary to preserve the complaint for
appellate review. See Solem v. Helm, 463 U.S. 277, 290-92, 103 S.Ct. 3001, 77 L.Ed.2d
637 (1983); see also Tex. R. App. P. 33.1(a); Solis v. State, 945 S.W.2d 300, 301
(Tex.App.-Houston [1st Dist.] 1997, pet. ref'd) (holding that a complaint of a grossly
disproportionate sentence was not preserved for review). After the jury reached a verdict
on punishment and sentence was pronounced by the trial court, appellant did not lodge an
objection or complaint regarding the 12-year sentence. Thus, no reversible error is
presented by counsel's second point.

 Counsel's last arguable contention is ineffective assistance of counsel. A claim of
ineffectiveness is reviewed under the standard set out in Strickland v. Washington, 466
U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under Strickland, a defendant must
establish that (1) counsel's performance was deficient (i.e., fell below an objective standard
of reasonableness), and (2) there is a reasonable probability that but for counsel's deficient
performance, the result of the proceeding would have been different, a reasonable
probability being a probability sufficient to undermine confidence in the outcome. Rylander
v. State, 101 S.W.3d 107, 110 (Tex.Cr.App. 2003); see also Hernandez v. State, 726
S.W.2d 53, 55 (Tex.Cr.App. 1986). In other words, a defendant must demonstrate that the
deficient performance prejudiced his defense. Mitchell v. State, 68 S.W.3d 640, 642
(Tex.Cr.App. 2002). Failure to make the required showing of either deficient performance
or sufficient prejudice defeats the ineffectiveness claim. Garcia v. State, 887 S.W.2d 862,
880 (Tex.Cr.App. 1994), cert. denied, 514 U.S. 1021, 115 S.Ct. 1368, 131 L.Ed.2d 223
(1995). 

 The adequacy of defense counsel's assistance is based upon the totality of the
representation rather than by isolated acts or omissions of trial counsel. Id. Although the
constitutional right to counsel ensures the right to reasonably effective counsel, it does not
guarantee errorless counsel whose competency or accuracy of representation is to be
judged by hindsight. Ingham v. State, 679 S.W.2d 503, 509 (Tex.Cr.App. 1984); see also
Ex Parte Kunkle, 852 S.W.2d 499, 505 (Tex.Cr.App. 1993). Appellate review of trial
counsel's representation is highly deferential and presumes that counsel's conduct fell
within the wide range of reasonable and professional representation. Bone v. State, 77
S.W.3d 828, 833 (Tex.Cr.App. 2002); see also Mallett v. State, 65 S.W.3d 59, 63
(Tex.Cr.App. 2001). Also, a claim of ineffectiveness must be firmly founded in the record. 
Thompson v. State, 9 S.W.3d 808, 813 (Tex.Cr.App. 1999); Mercado v. State, 615 S.W.2d
225, 228 (Tex.Cr.App. 1982).

 Although a motion for new trial was filed, no hearing was conducted. Generally, a
record on direct appeal is not sufficiently developed to satisfy the first prong of Strickland. 
Mitchell v. State, 68 S.W.3d at 642. A petition for writ of habeas corpus is the appropriate
manner in which to investigate claims of ineffectiveness. Id. Nevertheless, the record
reflects that appellant's trial counsel negotiated deferred adjudication with the State which
appellant declined. The record further demonstrates that despite appellant's outbursts
during the trial, counsel mounted an adequate defense, lodged objections, effectively cross-examined witnesses, and moved for an instructed verdict. The record does not
demonstrate that counsel's performance fell below an objective standard of
reasonableness. 

 Appellant filed a pro se response professing her innocence and maintaining she was
falsely accused by the victim, who is the daughter-in-law of the Chief of Police. She also
claims the person who stole her gun is the grandson of a popular preacher. These
assertions have no legal basis and are unsupported by the record. 

 Appellant also claims Ford offered her a ride to her vehicle but instead was driven
to the "robber's" house and told by Ford to get out. She denies having a knife with her
when she got into the van. These contentions were reviewed in our legal sufficiency
analysis and need not be revisited. Appellant also complains she was "let down" by trial
counsel; however, his performance was reviewed under Strickland and found to be within
the range of reasonable and professional representation. 

 We have also made an independent examination of the entire record to determine
whether there are any arguable grounds which might support the appeal. See Penson v.
Ohio, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988); Stafford v. State, 813 S.W.2d
503, 511 (Tex.Cr.App. 1991). We have found no such grounds and agree with counsel that
the appeal is frivolous. Currie v. State, 516 S.W.2d 684 (Tex.Cr.App. 1974); Lacy v. State,
477 S.W.2d 577, 578 (Tex.Cr.App. 1972).

 Accordingly, counsel's motion to withdraw is hereby granted and the judgment of the
trial court is affirmed.

 Don H. Reavis

 Justice


Do not publish.
1. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).



in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:3;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 mso-bidi-language:EN-US;}
h4
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 4 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:4;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-style:italic;}
h5
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 5 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:5;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 mso-bidi-language:EN-US;
 font-weight:normal;}
h6
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 6 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:6;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 mso-bidi-language:EN-US;
 font-weight:normal;
 font-style:italic;}
p.MsoHeading7, li.MsoHeading7, div.MsoHeading7
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 7 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:7;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoHeading8, li.MsoHeading8, div.MsoHeading8
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 8 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:8;
 font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 mso-bidi-language:EN-US;}
p.MsoHeading9, li.MsoHeading9, div.MsoHeading9
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 9 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:9;
 font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoFootnoteText, li.MsoFootnoteText, div.MsoFootnoteText
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Footnote Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;}
p.MsoHeader, li.MsoHeader, div.MsoHeader
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Header Char";
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 tab-stops:center 3.25in right 6.5in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoFooter, li.MsoFooter, div.MsoFooter
 {mso-style-priority:99;
 mso-style-link:"Footer Char";
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 tab-stops:center 3.25in right 6.5in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoCaption, li.MsoCaption, div.MsoCaption
 {mso-style-noshow:yes;
 mso-style-priority:35;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 mso-pagination:widow-orphan;
 font-size:9.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.MsoFootnoteReference
 {mso-style-noshow:yes;
 mso-style-priority:99;
 vertical-align:super;}
p.MsoTitle, li.MsoTitle, div.MsoTitle
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:15.0pt;
 margin-left:0in;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpFirst, li.MsoTitleCxSpFirst, div.MsoTitleCxSpFirst
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpMiddle, li.MsoTitleCxSpMiddle, div.MsoTitleCxSpMiddle
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpLast, li.MsoTitleCxSpLast, div.MsoTitleCxSpLast
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:15.0pt;
 margin-left:0in;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoSubtitle, li.MsoSubtitle, div.MsoSubtitle
 {mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Subtitle Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoAcetate, li.MsoAcetate, div.MsoAcetate
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Balloon Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
p.MsoNoSpacing, li.MsoNoSpacing, div.MsoNoSpacing
 {mso-style-priority:1;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-parent:"";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraph, li.MsoListParagraph, div.MsoListParagraph
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpFirst, li.MsoListParagraphCxSpFirst, div.MsoListParagraphCxSpFirst
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpMiddle, li.MsoListParagraphCxSpMiddle, div.MsoListParagraphCxSpMiddle
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpLast, li.MsoListParagraphCxSpLast, div.MsoListParagraphCxSpLast
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoQuote, li.MsoQuote, div.MsoQuote
 {mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Quote Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:black;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoIntenseQuote, li.MsoIntenseQuote, div.MsoIntenseQuote
 {mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Intense Quote Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:.65in;
 margin-bottom:14.0pt;
 margin-left:.65in;
 line-height:115%;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD .5pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleEmphasis
 {mso-style-priority:19;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:gray;
 font-style:italic;}
span.MsoIntenseEmphasis
 {mso-style-priority:21;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleReference
 {mso-style-priority:31;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 text-decoration:underline;
 text-underline:single;}
span.MsoIntenseReference
 {mso-style-priority:32;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 letter-spacing:.25pt;
 font-weight:bold;
 text-decoration:underline;
 text-underline:single;}
span.MsoBookTitle
 {mso-style-priority:33;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 letter-spacing:.25pt;
 font-weight:bold;}
p.MsoTocHeading, li.MsoTocHeading, div.MsoTocHeading
 {mso-style-noshow:yes;
 mso-style-priority:39;
 mso-style-qformat:yes;
 mso-style-parent:"Heading 1";
 mso-style-next:Normal;
 margin-top:24.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.Heading1Char
 {mso-style-name:"Heading 1 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 1";
 mso-ansi-font-size:14.0pt;
 mso-bidi-font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 font-weight:bold;}
span.Heading2Char
 {mso-style-name:"Heading 2 Char";
 mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 2";
 mso-ansi-font-size:13.0pt;
 mso-bidi-font-size:13.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading3Char
 {mso-style-name:"Heading 3 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 3";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading4Char
 {mso-style-name:"Heading 4 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 4";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.Heading5Char
 {mso-style-name:"Heading 5 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 5";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;}
span.Heading6Char
 {mso-style-name:"Heading 6 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 6";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 font-style:italic;}
span.Heading7Char
 {mso-style-name:"Heading 7 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 7";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.Heading8Char
 {mso-style-name:"Heading 8 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 8";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;}
span.Heading9Char
 {mso-style-name:"Heading 9 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 9";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.TitleChar
 {mso-style-name:"Title Char";
 mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Title;
 mso-ansi-font-size:26.0pt;
 mso-bidi-font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;}
span.SubtitleChar
 {mso-style-name:"Subtitle Char";
 mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Subtitle;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 font-style:italic;}
span.QuoteChar
 {mso-style-name:"Quote Char";
 mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Quote;
 color:black;
 font-style:italic;}
span.IntenseQuoteChar
 {mso-style-name:"Intense Quote Char";
 mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Intense Quote";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
p.NewDocument, li.NewDocument, div.NewDocument
 {mso-style-name:"New Document";
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 font-family:"Calibri","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;}
span.SpellE
 {mso-style-name:"";
 mso-spl-e:yes;}
span.GramE
 {mso-style-name:"";
 mso-gram-e:yes;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 font-size:10.0pt;
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:Arial;
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:Arial;}
 /* Page Definitions */
 @page
 {mso-footnote-separator:url("07-10-0184.cv%20opinion_files/header.htm") fs;
 mso-footnote-continuation-separator:url("07-10-0184.cv%20opinion_files/header.htm") fcs;
 mso-endnote-separator:url("07-10-0184.cv%20opinion_files/header.htm") es;
 mso-endnote-continuation-separator:url("07-10-0184.cv%20opinion_files/header.htm") ecs;}
@page Section1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-page-numbers:1;
 mso-title-page:yes;
 mso-footer:url("07-10-0184.cv%20opinion_files/header.htm") f1;
 mso-paper-source:0;}
div.Section1
 {page:Section1;}
@page Section2
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-title-page:yes;
 mso-footer:url("07-10-0184.cv%20opinion_files/header.htm") f2;
 mso-paper-source:0;}
div.Section2
 {page:Section2;}
-->








NO. 07-10-00184-CV

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL D

 



JULY
15, 2010

 



 

IN THE INTEREST OF D.S. AND N.S., CHILDREN



 



 

 FROM THE 106TH DISTRICT COURT OF GARZA
COUNTY;

 

NO. 05-11-06063-CV; HONORABLE KEVIN C. HART, JUDGE



 



 

Before QUINN,
C.J., and CAMPBELL and PIRTLE, JJ.

 

 

ORDER OF ABATEMENT AND REMAND

 

The trial court terminated the
parental rights of appellant, the father, to his children D.S. and N.S.  The order of termination rests on findings by
clear and convincing evidence of five predicate acts and that termination of
the parent child-relationship is in the best interest of D.S. and N.S.[1]  Appellant filed a statement of intended
appellate points[2]
that included assertions that insufficient evidence supported two of the
predicate grounds for termination and insufficient evidence supported the
finding that termination was in the best interest of the children.  Following a post-trial hearing, the trial
court found appellants intended appellate points were not frivolous.  It also appointed appellants trial counsel
to represent him on appeal.  A notice of
appeal was timely filed.

            Before
us is a motion by appellants counsel to withdraw from appellate representation.  A brief, which counsel refers to in the
motion as an Anders-style brief,[3]
was also filed.  The brief contains
counsels certification that in his opinion the appeal does not present
reversible error and is without merit and frivolous.  At the heart of the brief is an analysis of
two issues labeled potential issues. 
The first issue begins with a statement that the evidence was legally
and factually insufficient to support the judgment of termination.  Counsel cites five predicate acts on which
the trial court based its order of termination and then argues appellant does
not believe the record supports these findings and would move this Court to
overturn the Trial Courts decision. 
Through two sub-issues that follow, counsel details the evidence and
cites authorities to support his conclusion that insufficient evidence supports
the trial courts judgment.  In the
second issue, counsel discusses the trial courts determination that
termination of the parent-child relationship was in the best interest of the
children.  Here, counsel points to record
evidence of his positive acts to conclude appellant will be ready to resume
his parental [role] in the near future and each act supports the strong presumption
that the best interest of the child(ren) would be served by preserving the parent-child
relationship.  Counsels brief
concludes, however, with a prayer requesting withdrawal from representation.

            The
sole purpose of an Anders brief is to
explain and support the attorneys motion to withdraw.  In re Schulman, 252 S.W.3d 403, 404 (Tex.Crim.App.
2008).  Specifically, the Anders brief provides assurance to the
appellate court that counsel has thoroughly and conscientiously examined the
record and the applicable law, and has provided the court with the appropriate
facts, procedural history, and any potentially plausible points of error. Id. at 407.  The brief also, however, must express and
explain counsels conclusion there is no plausible basis for appeal.  Id.

Here, counsels brief does not
support his motion to withdraw.  Rather,
it materially contradicts the basis of the motion by arguing and concluding the
evidence was insufficient and termination of the parent-child relationship was
not in the best interest of the children. 
While it might be said counsels purpose was to discuss arguable issues,
the brief does not demonstrate the issues it raises are frivolous but advances
an argument of reversible error.  The
argument counsel advances is that of a brief on the merits of the appeal.  This is not an Anders brief.

            Accordingly,
we grant counsels motion to withdraw, abate this proceeding, and remand the
case to the trial court for appointment of new appellate counsel.  We direct the trial court to appoint new
counsel to represent appellant on appeal. The trial court shall furnish the
name, address, telephone number, and state bar number of new counsel by its
order appointing new counsel.  The order
shall be included in a supplemental clerks record, which shall be filed with
the clerk of this court by August 6, 2010. 
Should the trial court require additional time to comply with this
order, it shall so request before August 6, 2010.  Appellants brief shall be due twenty days
from the date of the trial courts appointment of new counsel.  All other appellate deadlines shall be in
accordance with the Texas Rules of Appellate Procedure for accelerated appeals.  By this order, we express no opinion on the
merit of any issues or potential issues the record may present.  

It is so ordered.

Per Curiam

 

 

            








 











[1]  See Tex. Fam. Code Ann. § 161.001(1),(2) (Vernon Supp. 2009).

 





[2] See Tex.
Fam. Code Ann. § 263.405(b) (Vernon 2008) (requiring one appealing termination
of parental rights initiated by Department of Family and Protective Services to
file statement of appellate points).

 





[3]
See Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).
Courts, including this court, have found the procedures set forth in Anders
v. California applicable to appeals of orders terminating parental rights. In re A.W.T., 61 S.W.3d 87, 88 (Tex.App.--Amarillo 2001, no pet.); see Taylor v. Texas Dep't of Protective & Regulatory Servs., 160 S.W.3d 641, 646-47 (Tex.App.-Austin 2005, pet. denied) (collecting cases).